UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In Re:

PATRICIA CASH

                Debtor/Appellant      **MEMORANDUM OF DECISION AND ORDER**
                                                           07CV1722 (ADS)

----------------------------------------------------------X
**APPEARANCES**

**ZINKER & HERZBERG LLP**
Attorneys for the Debtor/Appellant
278 East Main Street, Suite C
PO Box 866
Smithtown, NY 11787
       By:    Jeffrey Herzberg, Esq.

**THALER & GERTLER, LLP**
Attorneys for the Chapter 7 Trustee/Appellee, Andrew Thaler
900 Merchants Concourse
Suite 414
Westbury, NY 11590
       By:    Michael A Farina, Esq.

**SPATT, District Judge:**

This is an appeal by Patricia Cash (the "Debtor") from a decision of the United States Bankruptcy Court for the Eastern District of New York (Rosenthal, J.) denying her motion to amend her bankruptcy schedules and matrix of creditors to add four unscheduled debts and for discharge of those debts.

## I. BACKGROUND

### A. Factual Background

The Debtor filed her voluntary bankruptcy petition pursuant to Chapter 7 of the United States Bankruptcy Code on August 13, 2004. Included in the Debtor's schedule of creditors were: (1) one secured debt owing to Oceanfirst Bank having a mortgage lien on real property known as 29 Driving Park Avenue, Lynbrook, New York 11563 (the "Property") in the amount of $91,201.16; (2) no creditors possessing an unsecured, priority claim; and (3) twenty-six creditors possessing unsecured, non-priority claims in the total sum of $53,708.99. October 11, 2005 was the bar date that the Clerk of the Bankruptcy Court set as the deadline for creditors to file proofs of claim against the bankruptcy estate of Patricia Cash. The only unsecured creditors to timely file proofs of claim against the bankruptcy estate were the New York State Department of Taxation and Finance, which filed a claim in the amount of $156.45, and NCS Corp. (Citifinancial f/k/a Commercial Credit), which filed a general unsecured claim in the amount of $1,418.10. Oceanfirst Bank, as a secured creditor,

did not participate in the distribution from the estate.

Not included in the Debtor's schedule of creditors were four debts evidenced by judgments issued by non-bankruptcy judicial forums prior to the commencement of the bankruptcy case. The four creditors holding these debts were: (1) European American Bank, N.A., ("EAB"), which obtained a judgment against the Debtor in the Amount of $13,621.87 from the Third District Court of Nassau County on October 14, 1999; (2) Chase Manhattan Bank, U.S.A., N.A. ("Chase"), which obtained a judgment against the Debtor in the sum of $22,004.90 from the Supreme Court of the State of New York, County of Nassau on June 26, 2000; (3) Universal Bank, N.A., ("Universal"), which obtained a judgment against the Debtor in the sum of $5,762.42 from the First District Court of Nassau County on January 22, 2001; and (4) Erin Services Co., L.L.C. ("Erin"), which obtained a judgment against the Debtor in the sum of $38,475.63 from the Supreme Court of the State of New York, County of Nassau on April 5, 2004.

All of these judgments were duly recorded and perfected in the Nassau County Clerk's Office. The Debtor states that these debts were not included on her schedule of creditors due to a miscommunication between the Debtor and her original bankruptcy counsel at the time of the preparation of her bankruptcy case. Notably, the Debtor has not offered, either before this Court or before the bankruptcy court, any substantiation by her previous attorney of this alleged inadvertent error.

Ordinarily, unscheduled creditors do not receive formal notice of the bankruptcy petition from the Clerk of the Bankruptcy Court. However, the Debtor claims that both Chase and Erin were notified of the commencement of her bankruptcy case because although the debts owing them were not included in the Debtor's schedule, Chase and Erin were included on the Debtor's matrix of creditors. Upon the filing of a Chapter 7 case, the Clerk of the Bankruptcy Court has a practice of submitting a printed notification of the bankruptcy case to all parties listed in the matrix of creditors as prepared by the Debtor. Such mailing is provided for under Fed. R. Bankr. P. 2002(1).

On January 11, 2005, the Chapter 7 Trustee, Andrew M. Thaler, Esq., commenced an adversary proceeding against the Debtor and her husband, Ray Cash, to recover the Debtor's interest in the Property alienated through a series of allegedly fraudulent transfers of the Property between March of 1986 and June of 2000. Based on the limited claims filed by the Debtor's creditors, the parties entered into a stipulation of settlement in the amount of $7500, which was "So Ordered" by the Bankruptcy Court on January 23, 2006. The settlement amount allowed for full payment to the two unsecured creditors that had filed proofs of claim and for the administrative and professional fees associated with the petition. On October 13, 2006, the Trustee filed his Final Report reflecting the agreed upon settlement. A final hearing for approval of the Trustee's Report was scheduled for January 10, 2007.

On December 26, 2006, before the final hearing took place, the Debtor filed a motion to amend her schedules to add the four unscheduled debts. The Debtor requested that the court discharge the debts owed to Chase and Erin as they were supposedly notified of the bankruptcy petition. In addition, the Debtor moved the court to allow EAB and Universal, the two creditors not included in the matrix of creditors, time to file proofs of claim against the bankruptcy estate and deem those proofs of claim timely in order to share in the distribution of the estate. Also, the Debtor's motion sought to give EAB and Universal thirty days to file objections to the dischargeability of the debts they held. If EAB and Universal failed to file proofs of claim or objections to dischargeability, the Debtor further sought discharge of the debts owed to them as well. The Debtor contends that the four unscheduled creditors were duly served with her motion to amend.

The hearing on the Debtor's motion was adjourned several times and the Bankruptcy Court issued an order approving the Trustee's final report on February 16, 2007, before the Debtor's motion was heard. The Trustee sent notice to the Bankruptcy Court and the United States Trustee that distribution under the settlement would be delayed because the Debtor's motion remained pending. Further, the Trustee opposed the Debtor's motion, arguing that if the judgment liens of EAB and Universal were eradicated and they were relegated to general unsecured creditors, the claims against the bankruptcy estate would increase to nearly $21,000 from the mere

$1,574.55 in timely filed claims that existed when the Trustee negotiated the settlement on January 23, 2006. The Trustee argued that this would subvert the terms of the settlement and prejudice the existing creditors because with only $7,500 available in the estate, the creditors would receive far less than the 100% distribution that the Trustee had negotiated for. The Trustee did not show similar concern with respect to the debts held by Chase and Erin, still, the Trustee opposed the Debtor's motion to amend in its entirety.

**B.      The Bankruptcy Court's Decision**

On March 20, 2007, a hearing was held before the Honorable Joel B. Rosenthal of the United States Bankruptcy Court on the Debtor's motion to amend. The Debtor argued that the motion should be granted because none of the four unscheduled creditors had objected to the motion despite the great length of time between service of the motion and the hearing. The Debtor argued that the estate should be treated as a no-asset case as to the four unscheduled creditors because the time for them to timely file proofs of claim or objections to distribution had expired and they would not be entitled to any distributions from the estate. In opposition, the Trustee argued that despite the Debtor's contention, the requested relief in her motion sought to allow Universal and EAB to "share in the distribution of the assets of the

estate," thereby interfering with the structure of the settlement. (Tr. at 9:13–18)[*].

Judge Rosenthal denied the Debtor's motion in its entirety, including as to Chase and Erin, who ostensibly had notice of Cash's bankruptcy petition because of their inclusion in the matrix. The court found that the Trustee had agreed to the settlement in reliance upon the veracity of the Debtor's schedules. In addition, Judge Rosenthal stated: "to now let [the unscheduled creditors] come in and attempt to file proofs of claim and dilute the dividend that was the basis of the negotiation earlier, it would be inappropriate . . . ." (Tr. at 10:10–13).

Presently before the Court is the Debtor's appeal of the Bankruptcy Court's decision. The Debtor seeks an order expunging and vacating the judicial liens of the four unscheduled creditors, and discharging the personal liability underlying the judgments. In the alternative, the Debtor seeks an order for the same relief against Chase and Erin because they were included in the Debtor's matrix of creditors and therefore were on notice of the Debtor's Chapter 7 petition.

## II.     DISCUSSION

**A.     Standard of Review**

A district court hearing an appeal from a bankruptcy court reviews that court's findings of fact under the "clearly erroneous" standard, *see* Fed. R. Bankr. P. 8013,

---

[*] "Tr." refers to the transcript of the oral argument before the Honorable Joel B. Rosenthal on March 20, 2007.

while its conclusions of law are reviewed under the de novo standard. *In re Vouzianas*, 259 F.3d 103, 107 (2d Cir. 2001); *In re Arochem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999) (holding that "we review the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law de novo") (citation omitted); *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir. 1998) (same) (citations omitted); *see also In re Porges*, 44 F.3d 159, 162 (2d Cir. 1995) (same) (citations omitted).

"On appeal, a district court 'may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'" *Eton Centers, Co. v. McNally (In re McNally)*, No. 02-CV-85, 2003 U.S. Dist. LEXIS 25856, at *3 (S.D.N.Y. June 2, 2003) (citing Fed. R. Bankr. P. 8013).

**B.     As to Whether Cash Should be Allowed to Amend her Schedules to Add Unscheduled Debts**

Fed. R. Bankr. P. 1009(a) provides that "a voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby." However, the right to amend is not absolute and "cannot be exercised freely in all circumstances without regard to issues of bad faith and prejudicial reliance." *See In re Momentum Mfg. Corp*, 25 F.3d 1132, 1135 (2d Cir. 2002) (declining to allow amendment of schedules to delete amounts allocated to

employees' severance pay after debtor's reorganization plan was confirmed).  The Second Circuit has held that the bankruptcy courts "may sift the circumstances surrounding any claim in order to ascertain that injustice or unfairness is not accomplished in the administration of the debtor's estate, and in so doing it may adopt that remedy which it deems most appropriate under the circumstances." *Id.* at 1136 (quoting *In re Stirling Homex Corp.*, 591 F.2d 148, 155–56 (2d Cir.1978)).

Further, the benefit of the general right to amend "is seriously curtailed by [S]ection 523 of the Bankruptcy Code," which requires that creditors receive timely and sufficient notice of the bankruptcy proceeding. *In re Solkow*, 165 B.R. 763, 768 (Bankr. E.D.N.Y. 1994). "Section 523 of the Bankruptcy Code governs the nondischargeability of debts in a Chapter 7 proceeding." *In re Massa*, 187 F.3d 292, 295–96 (2d Cir. 1999).  A debt scheduled pursuant to Section 521(1) will be discharged "unless the debt is excepted from discharge under one of the exceptions set forth in [Section] 523(a)." *Id.* at 296.  According to Section 523(a)(3), an individual debtor does not receive a discharge from any debt:

> neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under

9

> one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request . . . .

11 U.S.C. § 523(a)(3).

The types of debts within the purview of Section 523(a)(3)(B) include those relating to false pretenses, actual fraud, a false representation, fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny, or willful and malicious injury. *In re Solkow*, 165 B.R. at 768. Because the debts at issue here stem from judicial judgments, they were not fraudulently incurred and only Section 523(a)(3)(A) applies. *See In re Massa*, 187 F.3d at 296.

Further, in no-asset cases, because no distribution occurs, creditors are not required to file proofs of claim and amendment to add additional creditors is permissible at any time. *In re Thompson*, 177 B.R. 443, 447 (Bankr. E.D.N.Y. 1995) ("[T]he debtor could theoretically add non-fraud debts to the schedules of the no-asset case forever."). However, here, as distribution was made to claiming creditors, this was not a bankruptcy of the no-asset type. Therefore "[i]f the debtor [did] not schedule a debt in time to permit the creditor to file a timely proof of claim, the debtor has improperly obstructed the creditor's ability to share in a distribution of the estate's assets." *Id.* at 446.

The Debtor first moved to add these debts to her schedules on December 26, 2006, more than fourteen months after the bar date for filing proofs of claim established by the Bankruptcy Court, and more than eleven months after the Debtor

and the Chapter 7 Trustee entered into the settlement agreement. Thus, unless the four unscheduled creditors had notice or actual knowledge of the case before the bar date of October 11, 2005, the Debtor will not be discharged from these debts. *See id.* ("[S]ection 523(a)(3) bars the discharge of non-fraud class debts not scheduled by the debtor in time to permit the creditor to file a timely proof of claim.").

It is Cash's burden to show that the four unscheduled creditors had notice of the bankruptcy case in time to submit proofs of claim. *See In re Massa*, 187 F.3d at 296 ("The burden of establishing that a creditor has received adequate notice rests with the debtor."); *In re Worthing*, 24 B.R. 774, 776 (Bankr. D. Conn. 1982) ("Because the debtor failed to list the subject debt, it cannot be considered duly scheduled within the meaning of 11 U.S.C. § 521(1) and consequently, the burden of proof shifts to the debtor to show that [the creditor] had notice or actual knowledge of the case in time for the timely filing of a proof of claim.").

Here, because Universal and EAB were neither included in the Debtor's schedule or matrix of creditors, they could not have been notified of the proceedings before the bar date, notwithstanding the Debtor's contentions that they were served with notice of her motion to amend on December 12, 2006. Further, the Debtor has not met her burden of showing that Chase and Erin had notice of the bankruptcy proceeding, even though they were included in the Debtor's matrix of creditors. Although it is the practice of the Clerk of the Bankruptcy Court to mail notices to all

creditors listed on the matrix, the Debtor has failed to submit the Clerk's affidavit of service or any other evidence to establish that the mailing was accomplished in this case.

Further, even if the Debtor could show that Chase and Erin had actual notice of the bankruptcy case and failed to file timely proofs of claim, the Court is not convinced that their unscheduled debts should be discharged. Often, where a creditor fails to file a timely proof of claim, their debt is not discharged but instead subordinated to timely claims of unsecured creditors. *In re Mid-Miami Diagnostics, L.L.P.*, 195 B.R. 20, 22 (Bankr. S.D.N.Y. 1996) ("[A] tardily filing creditor, who did receive notice or have actual knowledge of the case, is subordinated one level below that of the timely filing, unsecured creditors").

Finally, had the Debtor properly scheduled the debts owned by Chase and Erin at any point before the settlement was adopted by the Bankruptcy Court, the Trustee likely would have sought a greater sum in settlement of the adversary proceeding. Thus, the Trustee's reliance on the veracity of the schedules in negotiating a settlement with the Debtor is a relevant factor. Moreover, the Debtor had failed to substantiate by affidavit of her original attorney her claim that the omission of these debts from her schedules was a mere inadvertent error. The Bankruptcy Court was correct in its determination that the late date on which the Debtor filed her motion to amend, long after the settlement was entered into and adopted by the Bankruptcy

Court barred discharge of the four unscheduled debts.

### III. CONCLUSION

For the foregoing reasons it is hereby

**ORDERED**, that the Bankruptcy Court's Order denying the Debtor's motion to amend her schedules and to discharge her liability for the judicial liens due and owing to Universal, EAB, Chase, and Erin is affirmed.

**SO ORDERED.**
Dated: Central Islip, New York
   March 24, 2008

              _/s/ Arthur D. Spatt_
              ARTHUR D. SPATT
              United States District Judge